**E-FILED**
Monday, 11 July, 2016  09:37:19 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| **COLUMBIA INSURANCE CO.,** ) <br> **MiTek HOLDINGS, INC., and** ) <br> **MiTek USA, INC.,** ) <br> ) <br>   **Plaintiffs,** ) <br> ) <br>   **v.** ) <br> ) <br> **INTEGRATED STEALTH** ) <br> **TECHNOLOGY INC.,** ) <br> ) <br>   **Defendant.** ) | **No. 16-cv-3091** |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Defendant Integrated Stealth Technology Inc. has filed a Motion to Transfer (d/e 5) asking that this Court transfer the case to the United States District Court, Western District of Michigan, where Defendant has filed a declaratory judgment action regarding the same patents at issue in this lawsuit.  Defendant asserts that this Court lacks personal jurisdiction over Defendant and, even if personal jurisdiction exists, transfer is warranted under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

The Motion is DENIED.  Plaintiff has made a prima facie showing that Defendant is subject to personal jurisdiction in Illinois.  Moreover, transfer is not warranted under 28 U.S.C. § 1404(a).

## I. BACKGROUND

In April 2016, Plaintiffs Columbia Insurance Co., MiTek Holdings, Inc., and MiTek USA, Inc. filed a Complaint and Demand for Jury Trial (d/e 1) alleging that Defendant infringed on several of Plaintiffs' patents.  The patents pertain to improvements in automated jig systems, which are used to manufacture roof trusses for the construction of buildings.  Compl. ¶¶ 23, 24, 28.  Plaintiffs Columbia and MiTek Holdings own the patents at issue, and MiTek USA is the exclusive licensee of the patents.  Id. ¶¶ 8-22.  Plaintiffs allege that Defendant has made, used, sold, or offered for sale an "Auto Puck System" that infringes Plaintiffs' patents.  Id. ¶¶ 31, 35, 40, 41, 51, 52, 62, 63, 73, 74, 84, 85.  Two days after Plaintiffs filed this lawsuit, Defendant filed a declaratory judgment action in Defendant's home district, the Western District of Michigan, Integrated Stealth Tech., Inc. v. Columbia Ins. Co., MiTek Holdings, Inc., and MiTek USA, Inc., Case No. 1:16-cv-00355.

None of the parties is a citizen of Illinois.  Columbia is incorporated in Nebraska and has its principal place of business in Omaha, Nebraska.  Compl. ¶ 1.  MiTek Holdings is incorporated in Delaware and has its principal place of business in Chesterfield, Missouri. Id. ¶ 2.  MiTek USA is incorporated in Missouri and has its principal place of business in Chesterfield, Missouri.  Id. ¶ 3. Defendant is incorporated in Michigan and has its principal place of business in Michigan.  Id. ¶ 4; see also Def. Mot. at 3 (admitting that Defendant's sole office is located in Lansing, Michigan).

In May 2016, Defendant filed its Motion to Transfer. Defendant argues that it is not subject to personal jurisdiction in Illinois and, even assuming personal jurisdiction exists, transfer is still warranted for the convenience of the parties and witnesses and in the interest of justice.  See 28 U.S.C. § 1404(a).

In support of its Motion, Defendant submitted the Affidavit of Edward Joseph, the president and principal owner of Defendant.[1] Joseph states that: Defendant's only office is located in Lansing, Michigan; all of Defendant's owners, officers, and employees work

---

[1] The Court may consider affidavits when deciding a motion under Rule 12(b)(2) disputing personal jurisdiction.  See Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003).

from the Lansing office; all of Defendant's products are designed
and manufactured in, and sold from, the Lansing office; all of the
documentation and other information relating to the design and
manufacture of the Automated Puck System is located in Lansing,
Michigan; Defendant has no offices, property, or employees in
Illinois; and Defendant sold a single Automated Puck System to a
customer in Illinois in November 2013.  Def. Mot., Ex. 1 (d/e 6-1).

Plaintiffs allege in the Complaint that Defendant installed its
Automated Puck System on at least one occasion in Springfield,
Illinois.  Compl. ¶ 34.  In response to the Motion to Dismiss,
Plaintiffs submitted the Declaration of Joseph C. Carr, Jr., the Vice
President and General Counsel of MiTek USA.  Pls. Resp. Ex. B (d/e
9-2).  Carr states that MiTek USA and Defendant are competitors
and share mutual customers and solicit business from the same
potential customers.  From these ongoing customer interactions,
employees of MiTek USA have become generally aware of Defendant
and Joseph.  Id. ¶ 9.  Through interactions with customers and
potential customers, MiTek USA has identified seven locations
where Defendant has installed its Automated Puck System.  Id. ¶

10. [2]  One of the installations was at U.S. Truss Co.'s facility in
Springfield, Illinois.  Id.  None of the known installations is located
in the Western District of Michigan.  Id.  Plaintiffs also submitted a
page from Defendant's website that indicates that installation of
upgraded equipment (which presumably includes the Automated
Puck System) takes approximately five days and Defendant's
installations are personally overseen by Defendant's president.  Ex.
D (d/e 9-4); see also http://
www.integratedstealth.com/index.php/parts/before-and-after-
photos (last visited July 8, 2016).  Plaintiffs asserts that the sale
and installation of the Automated Puck System at U.S. Truss Co. in
Springfield, Illinois represents a considerable project and is
sufficient to justify the Court's exercise of specific jurisdiction over
Defendant.

---

[2] Defendant has not disputed these assertions.  Moreover, hearsay "bearing
circumstantial indicia of reliability may be admitted for purposes of
determining whether personal jurisdiction obtains."  Akro Corp. v. Luker, 45
F.3d 1541, 1546-47 (Fed. Cir. 1995) (internal quotation marks and citations
omitted).

## II. ANALYSIS

## A.    The Court Has Personal Jurisdiction Over Defendant

When determining whether the Court has personal jurisdiction over a defendant in a patent case, this Court applies the law of the Federal Circuit and not the law of the regional circuit in which the case arises.  See 28 U.S.C. § 1295(a)(1) (providing that the Federal Circuit has exclusive jurisdiction to review cases relating to patents); Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1016 (Fed. Cir. 2009) (noting that Federal Circuit law is applied when determining personal jurisdiction because the personal jurisdictional issue is "intimately involved with the substance of the patent laws") (internal quotation marks and citations omitted).

When the Court makes its personal jurisdiction determination based on the written submissions and without an evidentiary hearing, the plaintiff need only make a prima facie showing that Defendant is subject to personal jurisdiction.  Grober v. Mako Prods., Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012); Avocent Huntsville Corp. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328-29 (Fed. Cir. 2008) (where parties have not conducted discovery, the

plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction).  In such case, the Court accepts the uncontroverted allegations as true and resolves any factual disputes in the plaintiff's favor.  AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1360 (Fed. Cir. 2012); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (1994).

Defendant asks for an evidentiary hearing if the Court does not grant Defendant's motion on the written submissions, asserting that the Court can resolve any factual questions the Court may have at the evidentiary hearing.  However, the parties' submissions did not create any factual questions.  Further, as determined below, the written submissions support a finding that Plaintiffs have made a prima facie showing that Defendant is subject to personal jurisdiction.  Therefore, the request for an evidentiary hearing is denied.

A federal district court may exercise jurisdiction over a non-consenting out-of-state defendant if (1) the defendant is amenable to service of process and (2) exercising jurisdiction over the defendant comports with due process.  Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc., 603 F.3d 1364, 1368-69 (Fed.

Cir. 2010).  Because the Patent Act does not authorize nationwide service of process, the Court looks to Illinois' long-arm statute to determine whether Defendant is amendable to service of process. TechnoLines, LP v. GST AutoLeather, Inc., 799 F. Supp. 2d 871, 874 (N.D. Ill. 2011); see also Autogenomics, Inc., 566 F.3d at 1017 (the court looks at whether the forum state's long-arm statute permits service of process).

Illinois' long-arm statute is co-extensive with federal due process requirements.  See 735 ILCS 5/2-209(c) ("A court may also exercise jurisdiction on any basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States"); Ticketreserve, Inc. v. viagogo, Inc., 656 F. Supp. 2d 775, 781 (N.D. Ill. 2009) (the Illinois long-arm statute is coextensive with federal due process requirements). Therefore, the two-part inquiry collapses into one inquiry: whether the exercise of personal jurisdiction over the defendant comports with constitutional due process.  Campbell Pet Co. v. Miale, 542 F.3d 879, 884 (Fed. Cir. 2008) (holding that "when the state's long-arm statute extends to the limits of due process, the two-party inquiry collapses into one—

whether due process considerations permit the exercise of jurisdiction").

Constitutional due process requires that a nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  Moreover, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws (Hanson v. Denckla, 357 U.S. 235, 253 (1958)) such that the defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Under the minimum contacts test, personal jurisdiction can be general or specific.  Avocent, 552 F.3d at 1330. General jurisdiction requires that the defendant have "continuous and systematic" contacts with the forum.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).  However, Plaintiffs only

assert that Defendant's contacts with Illinois are sufficient to justify specific jurisdiction.  Pls. Resp. at 7.

To establish the minimum contacts necessary to establish specific personal jurisdiction, the Federal Circuit applies a three-factor test: whether (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair.  Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006).  "The first two factors correspond with the 'minimum contacts' prong of the International Shoe analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Plaintiffs bear the burden of establishing the first two factors while Defendant bears the burden of showing that the exercise of personal jurisdiction would be unreasonable.  Grober v. Mako Prods., Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012).

Plaintiffs argue that Defendant purposely directed its activities at Illinois by selling to and installing its Automated Puck System for a customer in Springfield, Illinois.  Plaintiffs argue that the sale of a

single infringing product can show purposeful availment sufficient
to meet the minimum contacts requirement of the specific
jurisdiction analysis.  Pls. Resp. at 8 (citing cases).  Plaintiffs also
point out that, according to Defendant's website, installation of the
Automated Puck System is a considerable project—taking up to 5
days—and that the president of Defendant personally oversees
installations of upgraded equipment.  See Pls. Memo., Ex. D
(printout from Defendant's website indicating that upgraded
equipment is installed "in around 5 days" and that all of
Defendant's installations are "personally overseen by our
president").

Defendant argues that Defendant has no offices, employees, or
property in Illinois.  In addition, only one sale to a single customer
in Illinois occurred two and a half years ago.  According to
Defendant, such contacts are insufficient to demonstrate personal
jurisdiction.

Plaintiff has made a prima facie showing that Defendant is
subject to personal jurisdiction.  Defendant sold the allegedly
infringing product to a customer in Springfield, Illinois.  As noted,
the parties dispute whether a single sale of a single product is

sufficient to confer specific jurisdiction.  However, Plaintiffs have

also asserted that Defendant installed the product which, according

to Defendant's website, purportedly takes up to five days and is

personally overseen by Defendant's president.  Such action shows

that Defendant purposefully directed its activities at Illinois by

accepting the order, installing the product in Illinois, and personally

overseeing the installation in Illinois.  See, e.g., Caddy Prods., Inc.

v. Greystone Int'l, Inc., No. 05-301, 2005 WL 3216689, at * 2 (D.

Minn. Nov. 29, 2005) ("By intentionally shipping the allegedly

infringing product to Minnesota, [defendant] purposefully directed

activity towards Minnesota").  In addition, Plaintiffs' lawsuit arises

out of or relates to Defendant's forum activities because the product

shipped to and installed in Illinois is the product accused of

infringement.  See Id.; see also, e.g., Avocent, 552 F.3d at 1332

(noting that in the ordinary patent infringement suit, the claim

arises out of "the defendant's alleged manufacturing, using, or

selling of the claimed invention").

Defendant cites Gro Master, Inc. v. Farmweld, Inc., 920 F.

Supp. 2d 974, 982-83 (N.D. Iowa 2013), for the proposition that a

single sale of an allegedly infringing product is insufficient to confer

specific personal jurisdiction over a defendant.  That case, however,
is distinguishable.

In Gro Master, the court held that the defendant's single
appearance at a trade show, publications in a national publication,
and single sale of an infringing product was insufficient to confer
specific jurisdiction over the defendant.  In particular, the court
found that the single sale was insufficient because the defendant
made hundreds of sales in another forum.  Id. at 983; but see
Equine PSSM Genetics, LLC v. Animal Genetics, Inc., No. 14-cv-
493, 2015 WL 868005, at *7 (Feb. 27, 2015) (noting that it is not
the volume of activity but the degree and type of contact that is
critical to determining whether a defendant directed activities
toward the forum state).

In contrast, the evidence presented here suggests that
Defendant has only made a total of seven sales of its Automated
Puck System.  The parties do not indicate where the other sales
occurred, although Plaintiffs assert the other sales did not occur in
the Western District of Michigan.  Unlike the situation in Gro
Master, where the one sale was insignificant in light of the total
number of sales made, the sale here was allegedly one sale out of

seven, making the sale more significant.  Moreover, Defendant did not merely sell a single product in Illinois.  Defendant purportedly installed the product and the Defendant's president personally oversaw the installation.

Having found the existence of purposeful minimum contacts, the Court turns to the last factor of the Federal Circuit's three-part test: whether the assertion of personal jurisdiction would comport with fair play and substantial justice.  As noted above, Defendant bears the burden of showing that the exercise of jurisdiction would be unreasonable under the circumstances.  Grober 686 F.3d at 1346.

The reasonableness inquiry involves the consideration of several factors: the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering the fundamental substantive social policies.  Asahi Metal Indust. Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 113 (1987).  Jurisdiction is unreasonable only in the rare case

"in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum".  Beverly Hills Fan Co., 21 F.3d 1558, 1568 (Fed. Cir. 1994).

In this case, Defendant offers no argument for why the exercise of jurisdiction would be unreasonable in these circumstances.  Therefore, Defendant has forfeited the argument.  Consequently, the Court finds that Plaintiffs have made a prima facie showing that Defendant is subject to personal jurisdiction in Illinois.

**B.    Transfer to the Western District of Michigan Would Not Serve the Convenience of the Parties and Witnesses and the Interest of Justice**

In the alternative to a transfer of the case to Michigan for lack of personal jurisdiction, Defendant argues the case should be transferred to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) of Title 28 of the United States Code provides the circumstances under which a court may transfer a civil action to another district or division:

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any civil
> action to any other district or division where it might
> have been brought or to any district or division to which
> all parties have consented.

28 U.S.C. § 1404(a).  The regional circuit law governs motions to transfer venue in patent cases.  See Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

To warrant transfer, the moving party must show that (1) venue is proper in the current district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses and will serve the interest of justice.  College Craft Cos., Ltd. v. Perry, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995); see also Gueorguiev v. Max Rave, LLC, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007).  The moving party bears the burden of proving the transferee district is more convenient.  Id. at 857.  Whether to transfer a case under § 1404(a) is within the court's discretion.  Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 977-78 (7th Cir. 2010) ("we grant a substantial degree of deference to the district court in deciding whether transfer is appropriate").

In this case, the parties only address whether the transfer will serve the convenience of the parties and witness and is in the interest of justice. The parties do not address whether venue is proper in this district or whether venue and jurisdiction are proper in the Western District of Michigan. In fact, Plaintiffs have filed a motion to dismiss for lack of personal jurisdiction in the case filed in the Western District of Michigan. See Pls. Resp., Ex. A (select documents from the Michigan lawsuit). The motion remains pending.

Venue is clearly proper in this district now that the Court has found personal jurisdiction over Defendant. Trintec Indust., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1280 (Fed. Cir. 2005) ("Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction"). Even if this Court assumes that venue and jurisdiction are proper in the Western District of Michigan, Defendant has not shown that transfer to the Western District of Michigan is warranted.

When considering the convenience factor, the Court considers the following factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to evidence; (4) the

convenience of the parties; and (5) the convenience of the witnesses. See Body Sci. LLC v. Boston Scientific Corp., 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012) (citing Research Automation, Inc. , 626 F.3d at 978).  The plaintiff's choice of forum is generally accorded substantial weight but is entitled to less deference when the forum is not the plaintiff's home forum or lacks significant contact with the litigation.  Plotkin v. IP Axess, Inc., 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001).

In this case, the Central District of Illinois is not Plaintiffs' home forum.  Plaintiffs assert they chose this district because it is convenient for one of the Plaintiffs, MiTek USA, whose corporate headquarters is located approximately 117 miles away in Missouri. However, because the Central District of Illinois is not Plaintiffs' home forum, and because Plaintiffs do not have meaningful contacts within the State of Illinois, Plaintiffs' choice of forum is given less deference.  First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc., No. 04 C 2728, 2004 WL 1921059, at *3 (N.D. Ill. July 21, 2004).   Therefore, this factor is only afforded some weight but weighs in favor of denying the transfer.

As for the situs of material events, in patent infringement actions, "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." Beverly Hills Fan Co., 21 F.3d at 1571 (finding that the situs of the injury was the place of the infringing sales in Virginia). When determining the situs of the injury, courts generally focus on the location of the allegedly infringing sales or the alleged infringer's place of business.  Energaire Corp. v. E.S. Originals, Inc., No. 99 C 3252, 1999 WL 1018039, at *3 (N.D. Ill. Nov. 2, 1999).

In this case, Plaintiffs assert that one (out of seven known sales) occurred in Illinois.  Defendant claims that all of its products are designed and manufactured in Michigan.  Consequently, the Court finds that this factor is neutral, as both forums are the situs of Plaintiffs' injury.

The third factor, relative ease of access to the evidence, weighs slightly in favor of transfer.  Defendant asserts that virtually all of the documentary evidence on which Defendant will rely is located in the Western District of Illinois. Plaintiffs claim that the purchasers of the infringing products, such as U.S. Truss Co. in Springfield, Illinois, are likely sources of evidence.  In addition,

Plaintiffs point out, the infringing product is a large piece of machinery and inspections of the Automated Puck System by expert witnesses and others would likely need to occur at the facility where the system has been installed, which includes the U.S. Truss facility in Springfield, Illinois.  Finally, Plaintiffs assert that the proliferation of electronic document generation, storage, and discovery renders the location of the documentary evidence irrelevant.

Patent infringement suits "often focus on the activities of the alleged infringer, its employees, and its documents." Wen Prods., Inc. v. Master Leather, Inc., 899 F. Supp. 384, 385 (N.D. Ill. 1995); see also Ambrose v. Steelcase, Inc., No. 02 C 2753, 2002 WL 1447871, at *3 (N.D. Ill. July 3, 2002) (finding access to sources of proof favored transfer to forum where evidence about the design, development and engineering of the allegedly infringing device was located).  Such evidence will likely be found in Michigan.  However, modern technology makes the transfer of data easier because electronic data and information can be sent electronically.  Craik v. Boeing Co., 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013) (noting that "in this computerized era of litigation, parties are no longer unduly

burdened by the prospect of transferring mass amounts of electronic data and information"). Therefore, this factor only slightly favors transfer.

The convenience-of-the-parties factor is neutral. Transferring the case to Michigan, which is more convenient for Defendant, would merely shift the inconvenience from one party to the other. See, e.g., Gueorguiev v. Max Rave, LLC, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007) ("The burden is on the moving party to demonstrate that the balance of the factors weighs heavily in favor of transfer and that transfer would not merely shift inconvenience from one party to another"). Therefore, this factor is neutral.

The convenience-of-the-witnesses factor is also neutral. Defendant bears the burden of establishing the witnesses Defendant would call, their testimony, and the importance of their testimony. Rohde v. Central R.R. of Ind., 951 F. Supp. 746, 748 (1997); Rosen v. Spirit Airlines, Inc., --- F. Supp. 3d ---, 2015 WL 3798150, at * 4 (N.D. Ill. June 17, 2015) (the moving party must "provide specific information about the witness testimony"). The Court should also consider whether the nonparty witnesses can be subpoenaed to testify from the forum. Rohde, 951 F. Supp. at 748.

Defendant does not provide sufficient information for the Court to determine whether transfer would be convenient to the witnesses.  While Defendant states that all of Defendant's owners, officers, and employees work from the Lansing, Michigan office, the convenience of employee-witnesses is generally given less weight than the convenience of non-party witnesses because the  witnesses are usually within the control of the parties.  Rorah v. Petersen Health Care, No. 13 C 01827, 2013 WL 3389063, at *4 (N.D. Ill. July 8, 2013); Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc., 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999).  Moreover, the Central District of Illinois is more convenient for Plaintiff MiTek USA's party representatives and witnesses who are located 117 miles away in Missouri.  In addition, this Court regularly uses videoconferencing to avoid the cost of travel for parties, witnesses, and attorneys, even for purposes of trial.  Given the lack of information provided by Defendant and the fact that witnesses can testify by videoconference, the Court finds this factor is neutral.

Considering the convenience of the parties and the witnesses, the Court finds that neither forum will avoid imposing inconvenience on the parties and the witnesses.  The inconvenience

in both forums is comparable.  In such case, "the tie is awarded to the plaintiff[.]"  In re Nat'l Presto Industs., Inc., 347 F.3d 662, 665 (7th Cir. 2003) ("When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff[.]").

Whether transfer would serve the interest of justice requires the Court consider the following factors: (1) the "docket congestion and likely speed to trial" in each forum; (2) "each court's relative familiarity with the relevant law;" (3) "the respective desirability of resolving controversies in each locale;" and (4) "the relationship of each community to the controversy. " Research Automation, 626 F.3d at 978.

According to the U.S. District Courts Federal Management Statistics[3] for the 12-month period ending March 2016, the average number of cases pending per judgeship in the Central District of Illinois was 473.  Weighted filings—statistics accounting for more

---

[3] See http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-march-2016

time-consuming cases—in the Central District was 390 cases per judgeship. The median time from filing to disposition in civil cases was 11 months. The median time from filing to trial in civil cases was 36.1 months. Total filings for the 12-month period ending March 31, 2016 in the Central District was1,905. The Central District of Illinois has four judgeships and no vacancies, three magistrate judges, and four senior judges.

In the Western District of Michigan, the average number of cases pending per judgeship was 423. The weighted filing was 444 cases per judgeship. The median time from filing to disposition of civil cases was 9.2 months. The median time from filing to trial in civil cases was 28 months. Total filings for the 12-month period ending March 31, 2016 was 2,136. The Western District of Michigan has four judgeships and no vacancies, four magistrate judges, and two senior judges. See

http://www.miwd.uscourts.gov/judicial-directory.

While the Western District of Michigan judges have more pending cases per judgeship when considering the weighted filings and more cases filed overall, the Western District also has a shorter

time between filing and disposition and filing and trial.  Therefore, the Court finds this factor is neutral.

The next factor, each forum's relative familiarity with the relevant law, is neutral.  Both this Court and the Western District of Michigan would be equipped to decide this case because patent infringement is a question of federal law.  <u>Body Sci.</u>, 846 F. Supp. 2d at 998.

The final factors -- the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy—weigh slightly in favor of transfer.  Illinois has an interest in the controversy because an allegedly infringing product was sold and installed in Illinois.  <u>Body Sci.</u>, 846 F. Supp. 2d at 998 (state where the allegedly infringing product is sold has an interest in the controversy).  However, Michigan has a greater interest because the allegedly infringing product was manufactured and developed in Michigan.  <u>See</u> <u>Body Sci.</u>, 846 F. Supp. 2d at 998.

Considering all of the factors, the Court finds that Defendant has failed to show that transfer to the Western District of Michigan is clearly more convenient or in the interest of justice.  The relevant factors are largely neutral or only slightly favor transfer.  Plaintiffs

have chosen this forum, and this forum is not unduly inconvenient to Defendant or adverse to the interest of justice.  Moreover, this forum has an interest in the litigation in light of the sale and installment of an allegedly infringing product in this district.  For all of these reasons, transfer is not warranted.

### III. CONCLUSION

For the reasons stated, Defendant's Motion to Transfer (d/e 5) is DENIED.  Defendant shall file an answer on or before July 25, 2016.

**ENTER: July 8, 2016**

**FOR THE COURT:**

<u>**s/Sue E. Myerscough**</u>
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**